FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

★   JUL 03 2002   ★

------------------------------------

                              x

ANAND E. DASRATH,

LONG ISLAND OFFICE

                Plaintiff,

           -against-

**COMPLAINT**

# CV 02 3889

Jury Trial Demanded

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,

# RAGGI, J.

               Defendant.

# POHORELSKY, M.

                              x

------------------------------------

Plaintiff, by and through his attorneys, alleges as follows:

## INTRODUCTION, JURISDICTION AND VENUE

1.      This is a civil action for discrimination based upon plaintiff's perceived

national origin and religion.  Plaintiff is seeking monetary damages and affirmative

relief based upon defendant's violation of:

      a.      Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et

seq.

      b.      The New York State Human Rights Law (the "State HRL"), N.Y. Exec. Law

§290 et seq.

      c.      The New York City Human Rights Law (the "City HRL"), N.Y.C. Admin.

Code §8-101 et seq.

2.      Jurisdiction of this Court is invoked under 28 U.S.C. §1331, 42 U.S.C.

1

§2000e-5(f)(3) and 28 U.S.C. §1367.

3.  Venue is proper pursuant to 42 U.S.C. §2000e-5(f)(3).

4.  All conditions precedent to commencing this action have been satisfied in

that Plaintiff:

a.  Filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on or about December 26, 2001;

b.  Received a right to sue letter from the EEOC on May 23, 2002; and

c.  Filed a notice of claim on December 26, 2001.

d.  Served a copy of this complaint upon the New York City Commission on

Human Rights and the New York City Corporation Counsel.

## PARTIES

5.  Plaintiff Anand E. Dasrath ("Dasrath") was at all times hereinafter

mentioned and is a resident of the State of New York, County of Queens, residing at89-

25 209th Street in Queens Village.

6.  Upon information and belief, defendant New York City Health and

Hospitals Corporation ("HHC") is a domestic not-for-profit corporation with its principal

place of business at 125 Worth Street in Manhattan.

7.  HHC is an employer as defined by Title VII, the State HRL and the City

HRL.

## BACKGROUND

8.  Dasrath is from Guyana, although his ancestors are from India and he

looks similar to people from India.

2

9       Dasrath is Lutheran, though the overwhelming majority of people in India are Hindu.

10.     Dasrath began employment with Kings County Hospital Center (the "Hospital"), a facility which is part of the HHC, in or about September 1983.  Dasrath has been employed as a pharmacist since that time, receiving his paychecks from HHC.

11.     Dasrath's performance has always been more than satisfactory.

12.     Dasrath's direct supervisor at the Hospital is Sayed Aslam ("Aslam"), who is Muslim of Pakistani descent.

13.     The Associate Executive Director at the Hospital is Sajjad Ahmed ("Ahmed"), who is Muslim of Pakistani descent.

14.     During practically Dasrath's entire time at the Hospital, and continuing through December 2001, Dasrath was subjected to discriminatory and harassing treatment from Aslam on the basis of Dasrath's perceived national origin (Indian) and religion (Hindu).  For example, Aslam made the following comments:

a.      Calling Dasrath a "generic Indian," in an apparent play on the term "generic drugs."

b.      Telling Dasrath to control himself and then stating that Indians were unruly.

c.      Telling Dasrath to "get a religion," in an indication that his religion (Muslim) is better than Dasrath's perceived religion (Hindu).

d.      Calling Dasrath a "mother chor," which is believed to mean "mother fu**er"

3

in Urdu.

15.     Dasrath was also subjected to discriminatory and harassing treatment from Ahmed.  For example, he made the following comments:

a.     Calling Dasrath a "cheap Indian."

b.     Asking Dasrath how many more rupees (the money used in India) Dasrath would get if he received a raise.

16.     Ahmed and Aslam frequently spoke in their native language (presumably Urdu) in Dasrath's presence and then laugh.

17.     Ahmed and Aslam were responsible for promotions in Dasrath's department.  In 1995 and again in April 2001, Dasrath requested a promotion to Assistant Director of the Pharmacy, but was denied the promotion despite his years of experience and qualifications.  Dasrath was told at that time that he would never be promoted.

18.     Dasrath was also never permitted to apply for any supervisory positions, which as of December 2001 (the end of Dasrath's employment) included approximately 8 pharmacists consisting of 4 or 5 Muslims, including 2 of Pakistani descent.

19.     In June 2001, Dasrath asked Ahmed to place him in the new 8 am to midnight weekend shift so that he could get 4 days off per week.  Ahmed refused to do this, instead giving the shift to 3 Muslim employees, including 2 of Pakistani descent.

20.     Over the years, Dasrath was not paid fully for the overtime he worked.  Most recently, in June 2001, Dasrath worked 4½ hours of overtime but was not paid.  This differs from the treatment of Mohammed Taqui, a Muslim pharmacist of Pakistani

4

descent who was always paid for his overtime.

21.     In December 2001, after more than 18 years of employment, Dasrath received a counseling notice for absenteeism, despite the facts that other Muslim employees and those of Pakistani descent have higher absenteeism rates and Dasrath's absences were all valid.

22.     Ahmed and Aslam provide unequal treatment to the pharmacists in the following ways:

a.      Promoting Muslims and those of Pakistani descent, while refusing to promote Dasrath or more than a token amount of those believed to be Hindu, Indian, Jewish or those of other religions and national origins.

b.      Disciplining Dasrath while not disciplining Muslims and those of Pakistani descent.

c.      Refusing to provide Dasrath with a requested weekend schedule, while providing it to Muslims and those of Pakistani descent.

23.     Based upon the years of discrimination and harassment, Dasrath had no choice but to resign, effective January 5, 2002.

## AS AND FOR A FIRST CAUSE OF ACTION
### National origin and religious discrimination in violation of Title VII

24.     Dasrath repeats and realleges each and every allegation set forth above as if fully set forth herein.

25.     Based upon the foregoing, HHC intentionally discriminated against and harassed Dasrath on the basis of his perceived national origin and religion, in violation

of Title VII of the Civil Rights Act of 1964, as amended.

26.     As a result of the discriminatory treatment, Dasrath has suffered a loss of

earnings and benefits, in addition to suffering mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION
### National origin and religious discrimination in violation of the State HRL

27.     Dasrath repeats and realleges each and every allegation set forth above

as if fully set forth herein.

28.     Based upon the foregoing, HHC intentionally discriminated against and

harassed Dasrath on the basis of his perceived national origin and religion, in violation

of the State HRL.

29.     As a result of the discriminatory treatment, Dasrath has suffered a loss of

earnings and benefits, in addition to suffering mental anguish.

## AS AND FOR A THIRD CAUSE OF ACTION
### National origin and religious discrimination in violation of the City HRL

30.     Dasrath repeats and realleges each and every allegation set forth above

as if fully set forth herein.

31.     Based upon the foregoing, HHC intentionally discriminated against and

harassed Dasrath on the basis of his perceived national origin and religion, in violation

of the City HRL.

32.     As a result of the discriminatory treatment, Dasrath has suffered a loss of

earnings and benefits, in addition to suffering mental anguish.

**WHEREFORE**, Dasrath requests judgment against HHC as follows:

a.     Pursuant to all three causes of action, for the pay and benefits which he

would have received if not for HHC's discriminatory conduct.

      b.     Pursuant to all three causes of action, for compensatory damages in an amount to be determined at trial, but believed to be at least $300,000.

      c.     Pursuant to his first and third causes of action, for punitive damages in an amount to be determined at trial, but believed to be at least $300,000.

      d.     Pursuant to his first and third causes of action, for payment of his attorney's fees.

      e.     Pursuant to all three causes of action, for payment of his costs.

      f.     Any other and further relief that this Court deems just and proper.

Dated:      Farmingdale, New York
              June 24, 2002

                       SOMMA, ZABELL & ASSOCIATES, LLP
                       Attorneys for Plaintiff
                       500 Bi-County Boulevard, Suite 206N
                       Farmingdale, New York 11735
                       (631) 439-0158

                       BY:      _Brian K. Saltz_
                              Brian K. Saltz, (Of) Counsel (BS-5857)

Complaint.wpd

7